[Cite as *State v. Avery*, 2026-Ohio-2632.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2025-CA-51 |
| Appellee | : | |
| | : | Trial Court Case No. 25-CR-033 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| EDWIN ARTHUR AVERY | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on July 10, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately send a copy of the court's ruling to each party and note that action on the docket. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
ROBERT G. HANSEMAN, JUDGE

LEWIS, P.J., and HUFFMAN, J., concur.

S. ADELE SHANK, Attorney for Appellant
JOHN M. LINTZ, Attorney for Appellee

HANSEMAN, J.

{¶ 1} Appellant Edwin Arthur Avery appeals from his conviction in the Clark County Common Pleas Court after a jury found him guilty of failure to comply with an order or signal of a police officer. In support of his appeal, Avery contends that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. Avery also contends that his trial counsel provided ineffective assistance during closing argument by conceding his guilt and focusing solely on the issue of whether a felony-enhancing provision of the failure-to-comply offense was proven by the evidence. For the reasons outlined below, we disagree with Avery's claims and affirm the judgment of the trial court.

**Facts and Course of Proceedings**

{¶ 2} On January 21, 2025, a Clark County grand jury returned an indictment charging Avery with one third-degree felony count of failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B) and (C)(5)(a)(ii). Avery pleaded not guilty to the charge, and the matter proceeded to a jury trial on July 9, 2025. Deputy Ashlie Walter of the Champaign County Sheriff's Office was the only witness to testify at Avery's trial. In addition to Walter's testimony, the State presented video footage recorded from Walter's police cruiser camera and body camera. The following is a summary of the evidence that was presented at trial.

{¶ 3} On the night of December 12, 2024, Walter was employed by the Springfield Police Division. She was dispatched to 801 Pleasant Street, the address of a local bar, on

the report of an individual with multiple warrants being present in the area. Walter and two fellow officers reviewed security video footage from the bar showing the individual in question, Avery, entering a blue Honda Pilot. The officers exited the bar and observed the blue Honda Pilot parked nearby on Central Avenue. Walter pulled her police cruiser behind the blue Honda Pilot and gave several orders for Avery to roll his window down and to stick his hands outside of the window. After approximately three minutes of Walter giving those orders, Avery sped away. Walter activated the siren on her police cruiser and gave chase.

{¶ 4} As Walter pursued Avery in her police cruiser, Avery was traveling approximately 51 mph in a 25-mph zone under wet, slick conditions. In addition to noting Avery's speeding offense, Walter saw Avery run a red light, drive in the opposite lane of travel, and commit multiple stop-sign violations. Three minutes after fleeing from Walter's attempted stop, Avery lost control of his vehicle and crashed between a telephone pole and a chain-linked fence. Avery was transported from the crash scene to the hospital and later charged with failure to comply with an order or signal of a police officer.

{¶ 5} During closing arguments, Avery's trial counsel conceded that Avery had willfully fled from the police and committed fourth-degree felony failure to comply with an order or signal of a police officer. However, Avery's counsel argued that, in committing the offense, Avery did not cause a substantial risk of serious physical harm so as to elevate the offense to a third-degree felony in accordance with R.C. 2921.331(C)(5)(a)(ii). The jury disagreed and found Avery guilty as charged. The trial court sentenced Avery to 48 months in prison and ordered him to serve his sentence consecutively with his prison sentence in Clark C.P. No. 24 CR 729A.

**{¶ 6}** Avery now appeals from his conviction, raising three assignments of error for review. Because they are interrelated, we address Avery's first and second assignments of error together.

## First and Second Assignments of Error

**{¶ 7}** Under his first and second assignments of error, Avery contends that his conviction for failure to comply with an order or signal of a police officer was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.

### Standards of Review

**{¶ 8}** "When a defendant challenges the sufficiency of the evidence, [he] is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law." *State v. Matthews*, 2018-Ohio-2424, ¶ 7 (2d Dist.), citing *State v. Hawn*, 138 Ohio App.3d 449, 471 (2d Dist. 2000). "'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id*., quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997), citing *Jenks* at 273.

**{¶ 9}** In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2009-Ohio-525, ¶ 12 (2d Dist.), citing *State v.*

4

*Hufnagel*, 1996 WL 501470 (2d Dist. Sept. 6, 1996). When evaluating whether a conviction was against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

*Law and Analysis*

{¶ 10} Avery was convicted of failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B), which required the State to prove that Avery was "operat[ing] a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." R.C. 2921.331(B). Because Avery was also charged under R.C. 2921.331(C)(5)(a)(ii)—a provision that enhances the offense to a third-degree felony—the State was also required to prove that "[t]he operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property."

{¶ 11} In this case, Avery claims that the State failed to present evidence establishing that a "police officer," as defined under R.C. 2921.331, issued a visible or audible signal for him to stop his vehicle. Under R.C. 2921.331(F)(2), the term "police officer" has the same meaning as in R.C. 4511.01. Under R.C. 4511.01(Z), "police officer" means "every officer authorized to direct or regulate traffic, or to make arrests for violations of traffic regulations."

5

**{¶ 12}** We stress that Avery is not claiming that the State failed to present evidence establishing that he willfully fled from Walter and ignored Walter's police sirens as she pursued him in her police cruiser. Indeed, the video evidence clearly established those events. Instead, Avery claims that Walter is not a "police officer" as that term is used in R.C. 2921.331(B). Avery asserts that every element of the failure to comply offense depends on proof beyond a reasonable doubt that the visible or audible signal for him to stop was given by an officer authorized to direct or regulate traffic or to make arrests for traffic violations. Because Walter did not specifically testify that she or any of the other officers at the scene were authorized to carry out those functions, Walter claims that the State failed to establish that he willfully fled or eluded a "police officer."

**{¶ 13}** In *State v. Schwable*, 2009-Ohio-6523 (3d Dist.), the Third District Court of Appeals addressed the exact same argument. The court first looked to R.C. 109.77, which governs the certification requirements for all "peace officers." The court noted that a "peace officer" includes a "member of the organized police department of a township or municipal corporation." R.C. 109.71(A)(1). The court then explained that R.C. 109.77 provides the following with regard to peace officer certification:

> (B)(1) Notwithstanding any general, special, or local law or charter to the contrary, and except as otherwise provided in this section, no person shall receive an original appointment on a permanent basis as any of the following unless the person previously has been awarded a certificate by the executive director of the Ohio peace officer training commission attesting to the person's satisfactory completion of an approved state, county, municipal, or department of natural resources peace officer basic training program:

(a) A peace officer of any county, township, municipal corporation, regional transit authority, or metropolitan housing authority.

{¶ 14} Based on the foregoing statutory language, the court in *Schwable* determined that "because a municipal police officer is a peace officer, and no peace officer can be hired without being certified by the Ohio Peace Officer Training Commission, all police officers are certified." *Id*. at ¶ 27. With that in mind, the court concluded:

Here, Detective Robertson testified that he was employed as a detective by the Napoleon Police Department. Although there was no evidence presented that he was a certified police officer, or that he was authorized to regulate or direct traffic, no such evidence was needed, as all police officers are certified, and, therefore, authorized to direct or regulate traffic, pursuant to R.C. 109.77. Consequently, we find that sufficient evidence was presented to establish that Detective Robertson was a "police officer" under R.C. 2921.331 and R.C. 4511.01(Z), and, therefore, sufficient evidence existed to support Schwable's conviction for failure to comply with an order or signal of a police officer.

*Id*. at ¶ 28.

{¶ 15} We agree with the analysis in *Schwable*. Despite the absence of direct evidence indicating that Walter was authorized to direct or regulate traffic or to make arrests for traffic violations, we nevertheless conclude that there was sufficient evidence presented at trial to establish that Walter was a police officer who was authorized to carry out those functions. Walter testified that she was a deputy sheriff with the Champaign County Sheriff's Office who, on the night of the incident, was employed by the Springfield Police Division.

7

Because she was a municipal police officer, Walter was necessarily a certified police officer. *Schwable* at ¶ 27.

{¶ 16} In addition, Walter's testimony indicated that she engaged in typical police work on the night in question. Walter testified that she was dispatched to a local bar in reference to an individual with multiple outstanding warrants, reviewed security video footage with other officers, pursued Avery for his outstanding warrants and his noncompliance, and assisted with Avery's transport to the hospital. Walter also testified to pursuing Avery in a police cruiser and to wearing a body camera.

{¶ 17} The video evidence admitted at trial further established that Walter was a police officer. Text on the bottom right corner of the cruiser camera video reads: "Springfield PD Ashlie Walter Car 54." State's Ex. 1(A). The video contains audio from Walter inside the police cruiser giving Avery several commands to roll his window down and to stick his hands out of the window. The video also shows Walter pursuing Avery in her police cruiser after Avery ignored her commands and drove away. The video additionally shows that after Avery lost control of his vehicle and crashed, Walter and several other officers approached Avery's vehicle with their weapons drawn. Significantly, the video shows that Walter and the other officers all wore standard police uniforms.

{¶ 18} When viewing all the foregoing evidence in a light most favorable to the State, a rational trier of fact could have concluded beyond a reasonable doubt that Walter was a police officer who was authorized to regulate or direct traffic or to make arrests for traffic violations. Accordingly, Avery's claim that the State failed to present sufficient evidence establishing that Walter was a "police officer" under R.C. 2921.331(B) lacks merit.

{¶ 19} Also lacking merit is Avery's claim that his failure to comply conviction is against the manifest weight of the evidence. Avery's manifest weight claim is based solely

on his allegation that the weight of the evidence did not support the jury's finding that Walter was a police officer. After reviewing the entire record, weighing all the evidence and reasonable inferences, and considering witness credibility, we do not find that the jury lost its way or created a manifest miscarriage of justice by finding that Walter was a police officer. The weight of the evidence not only established that Walter was a police officer but also that Avery willfully fled from Walter and the other officers who were pursuing him. Because the weight of the evidence supported the jury's guilty verdict, this is not a case that presents the kind of exceptional circumstance that warrants reversing Avery's conviction on manifest weight grounds.

{¶ 20} Avery's first and second assignments of error are overruled.

### Third Assignment of Error

{¶ 21} Under his third assignment of error, Avery claims that his trial counsel provided ineffective assistance while giving his closing argument. Specifically, Avery takes issue with his trial counsel conceding that he was guilty of the failure to comply offense and simply arguing that the State had failed to prove the felony-enhancing provision under R.C. 2921.331(C)(5)(a)(ii). According to Avery, his trial counsel should have instead contested his guilt by arguing that the State had failed to establish that Walter was a "police officer" under R.C. 2921.331(B). We disagree.

*Standard of Review*

{¶ 22} This court reviews alleged instances of ineffective assistance of trial counsel under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which has been adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136 (1989). Pursuant to these cases, in order to prevail on an ineffective-assistance claim, Avery must show that his trial counsel rendered deficient performance and that the deficient

9

performance prejudiced him. *Strickland* at 687; *Bradley* at paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

{¶ 23} A trial counsel's performance is deemed deficient if it falls below an objective standard of reasonable representation. *Id*. at 688. When evaluating counsel's performance, a reviewing court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available." *State v. Hall*, 2021-Ohio-1894, ¶ 55 (2d Dist.), citing *State v. Cook*, 65 Ohio St.3d 516, 524 (1992). Accordingly, this court will not second-guess decisions of counsel that may be considered matters of strategy. *Id*., citing *State v. Smith*, 17 Ohio St.3d 98 (1985).

{¶ 24} To establish prejudice, the defendant must show that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 2008-Ohio-3426, ¶ 204, citing *Strickland* at 687-688 and *Bradley* at paragraph two of the syllabus. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Bradley* at 142, quoting *Strickland* at 694.

*Law and Analysis*

{¶ 25} In this case, we do not find that trial counsel rendered deficient performance by conceding that Avery was guilty of the failure to comply offense. "'[C]ounsel's concession of a client's guilt does not automatically constitute deficient performance.'" *State v. Ferguson*, 2018-Ohio-920, ¶ 32 (4th Dist.), quoting *Young v. Catoe*, 205 F.3d 750, 759 (4th Cir. 2000). "When defense counsel concedes his client's guilt to a charge in an effort to enhance credibility by being candid and realistic with the jury, such a decision may be

10

construed as tactical or strategic and, therefore, does not constitute ineffective assistance of counsel." *State v. Luke*, 2004-Ohio-6137, ¶ 30 (5th Dist.), citing *State v. Goodwin*, 1999-Ohio-356, ¶ 36. Indeed, conceding uncontroverted points is sound trial strategy. *State v. Clark*, 2016-Ohio-2705, ¶ 44 (4th Dist.), citing *State v. Wade*, 2015-Ohio-997, ¶ 23 (4th Dist.).

**{¶ 26}** Given the overwhelming evidence of Avery's guilt, trial counsel reasonably decided to concede at closing argument that Avery had committed the failure to comply offense, and counsel instead focused on challenging the felony-enhancement element under R.C. 2921.331(C)(5)(a)(ii). Contrary to Avery's claim otherwise, the State presented sufficient evidence of the failure to comply offense, as we explained above in our analysis rejecting Avery's claim that the State had failed to present evidence establishing that Walter was a "police officer" under R.C. 2921.331(B). The strategic decision of Avery's trial counsel to concede guilt and focus on challenging the felony-enhancement element fell within the wide range of reasonable professional assistance and cannot form the basis of an ineffective-assistance claim.

**{¶ 27}** Even if counsel's trial strategy had been deficient, Avery cannot establish prejudice arising from counsel's performance because there is not a reasonable probability that the outcome of Avery's trial would have been different if counsel had employed a different strategy by contesting Avery's guilt on grounds that Walter was not a police officer under R.C. 2921.331(B). Because the evidence overwhelmingly supports finding that Walter was a police officer under that statute, it is highly unlikely, if not an impossibility, that the jury would have reached a different conclusion on that issue if counsel had raised it during his closing argument. Regardless, any such determination is speculation, and "speculation is

insufficient to establish ineffective assistance." *State v. Short*, 2011-Ohio-3641, ¶ 119, citing *State v. Perez*, 2009-Ohio-6179, ¶ 217.

{¶ 28} Because Avery cannot establish deficient performance on the part of his trial counsel or any prejudice, his ineffective assistance claim necessarily fails.

{¶ 29} Avery's third assignment of error is overruled.

## Conclusion

{¶ 30} Having overruled all three assignments of error raised by Avery, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

LEWIS, P.J., and HUFFMAN, J., concur.